### W. F. LUCKIE ET AL. v. C. W. WATT.

#### No. 6518.

1.   **Settler on Public Land.**—The Act of 1883 (Gen. Laws, p. 85), which provided for the classification and sale of land, required an applicant for purchase to be an actual settler in good faith, and that he should have settled on the land with a view to its purchase.   Such settlement was a condition precedent to the right to purchase, and is distinct from the character of settlement made with a view to acquiring a pre-emption right.   The rights acquired under the different modes of settlement were determined by different tribunals.

2.   **State Land Board.** — The State Land Board was invested with authority to pass upon conflicting claims by applicants desiring to purchase public school land.

3.   **Public School Land—Settler.** — The mere fact that one was the head of a family in actual possession in good faith of public school land in January, 1884, and that he had located on the same for the purpose of acquiring a homestead, conferred no right as against a purchaser to whom the land was awarded by the State Land Board.

APPEAL from Kinney.   Tried below before Hon. Winchester Kelso. The opinion states the case.

*Clamp & Clamp,* for appellants. — 1.　The fact of the survey of land in question having been classified and placed upon the market, subject to sale under the act of the Legislature and the provisions of the State Land Board, and the said A. W. Haley, from whom appellants purchased, having an actual residence thereon on the 1st day of January, 1884, and having complied as far as was in his power to do with the provisions of said act and the rulings of the Land Board within six months after the land was placed upon the market, gave to his vendees, the appellants, an inchoate right to the land; and it was not in the power of the Land Board to divest Haley of that right.　Acts 1883, p. 86, sec. 5; Canales v. Perez, 65 Texas, 291.

2.　Where a person locates land with full knowledge of a prior equity he and his privies are bound by such equity.　Magee v. Chadoin, 30 Texas, 661.

3.　The evidence offered was proper and legitimate to show the equity appellants had in the land.

*Clark & Old,* for appellee. — The appellant, to have shown equities in himself to the land in controversy, or any legal prior right to purchase the same after it was placed on the market, should have shown that he was an actual settler upon said land in good faith on the 1st day of January, 1883, and that the statute regulating the sale of said land had been substantially complied with; and the mere fact that his vendor was the head of a family, and was on the 1st day of January, 1884, in the actual possession in good faith of the section in controversy, and had located upon the same for the purpose of acquiring a homestead, and that within six months after the same was placed upon the market he applied for the purchase thereof and "tendered the purchase money to the State," fails to show a compliance with the law regulating the sale of public school land.　Acts 18th Leg., pp. 85–87, secs. 3–9; Ramsey v. Medlin & Langford, 55 Texas, 248.

HOBBY, Judge.—C. W. Watt brought suit in the District Court of Kinney County in March, 1887, against W. F. Luckie and Ira L. Wheat to recover the land described in the petition.　A writ of sequestration was issued and levied, and defendants replevied.　They answered by a general denial and set up title in themselves.　Trial was had October 26, 1887.

The court instructed the jury that the plaintiff having shown title in himself to the land sued for, and defendants having admitted possession, but introduced no evidence showing title or right of possession, they would return a verdict for plaintiff.　This the jury did, with $12.10 damages for occupation and use of the premises.

Plaintiff's title consisted of a patent from the State to S. H. & G. S. Nunn conveying the land, dated October 26, 1886; deed from S. H. & G. S. Nunn to plaintiff, dated January 17, 1887, conveying the same land.

Defendants offered to prove that "A. W. Haley, from whom defendants

claim title, was the head of a family, and was on the 1st day of January, 1884, in actual possession in good faith of the identical land in suit, located upon the same for the purpose of acquiring a homestead; that within six months after the same was placed upon the market he applied for the purchase thereof and tendered the purchase money to the State; that at said date the land in suit was survey No. 874 and school land; that for some reason unknown to Haley the land was not awarded to him, but was in "April, 1884, awarded by the State Land Board to Robert Boyd, from whom plaintiff claims title under the certificate located as survey No. 873, but subsequently changed to survey 874; that said Boyd never was an actual settler upon the land; that the survey numbers since April, 1884, were changed, but that the land is the same 640 acres, as shown by field notes."

This was objected to by plaintiff's counsel, substantially because the defendants failed to show any equity in the land, and the evidence attempted to be introduced shows that the land to which they asserted claim had been awarded by the State Land Board to Robert Boyd, and this award was conclusive as between the parties seeking to purchase said land and could not be impeached in this action; and further, because the patent in evidence shows that the land in controversy is not a State or school section, but is 640 acres surveyed for a railroad company, and was patented to plaintiff's vendors. These objections were sustained, the evidence excluded, and the court's action furnishes the ground for the first assignment of error.

If all of the excluded testimony had been admitted it would not, we think, in any degree have contributed to the defendants' success or have authorized a decree in their favor, nor would it have detracted from or impaired the title of the plaintiff. If the defendants' vendor Haley had either through or by virtue of the facts which were attempted to be established by the excluded testimony acquired any character of legal or equitable right to the land under the law providing for its sale by the Land Board, it is manifest from the record before us that it had been passed upon by said board adversely to Haley, and this tribunal was invested with authority to adjudicate such right if any existed.

But it does not appear from the evidence excluded that if it had been admitted it would have established any right under the act of 1883 to the land upon the part of the defendants' vendor Haley. That act (page 85, General Laws, 1883), providing for the classification and sale, etc., of said land, required the applicant for purchase to be an actual settler in good faith, and that he should have so settled upon it with a view to its purchase. Many other statutory requirements were stipulated, the compliance with which constituted the condition precedent to the right to purchase. Snyder v. Nunn, 66 Texas, 256; Taylor v. Burke, 66 Texas, 646; Martin v. McCarty, 74 Texas, 132.

The evidence offered indicates that the settlement made or attempted to be made by Haley was with a view to the acquisition of the land as a

homestead under the pre-emption laws. It was proposed to prove that he was the "head of a family," and that he "located upon it for the purpose of acquiring a homestead." This was not the character of acquisitions of land to which the act first referred to relates. That act (the law of 1883, *supra*) provided for a mode of acquiring the public lands by individuals wholly distinct from that prescribed by our pre-emption laws. The leading distinction between these methods of acquiring lands which these laws disclose is that in the former the land is sold under direction of a special tribunal—the Land Board. In the latter the lands are not under any circumstances sold to the head of the family, and the jurisdiction of the Land Board does not attach. There are many other important distinctions not, however, necessary to refer to.

There was no error in excluding the testimony offered by defendants. We think the judgment should be affirmed.

*Affirmed.*

Adopted May 13, 1890.