## S. D. Smith v. Lucy McLain.

### No. 1216. Decided June 1, 1903.

**Public Land—Lease—Waiver—Purchase.**

A waiver, by the lessee of lands within the absolute lease district, of his rights under the lease, in favor of a named person desiring to purchase it, did not authorize its sale to another. If the person named did not make a valid purchase, the lease remained in effect and prevented the sale of the land to a third person. (Pp. 570, 572.)

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Kent County.

*Kinder & Dalton,* for appellant.—It is now definitely settled that such a lease may be waived and the effect of such waiver is to place the land upon the market for sale. The limitation in the waiver, that is the lease having been waived in favor of Lucy McLain and none other, did not restrict its effect so far as revesting the complete title in the State when the company permitted its acceptance by the State without objection. At any rate the direct purpose for which the relinquishment was made was accomplished. The waiver was made for her, the land was awarded to her in accordance with the express intention of the instrument itself. The Land Commissioner awarded the land to her. He could go no further and the company could ask no more, and could not reasonably expect that in the event the sale to her was not perfect through some act of her own that the waiver could be recalled and the rights of the lessee placed in statu quo. The condition would not destroy the validity of the waiver, and its effect was the entire extinguishment of the company's right in the lease, and having been accepted by the lessor it became binding as a full waiver. All the purposes for which the waiver was executed were accomplished,—the acceptance of the waiver, the sale of the land to Miss McLain and the cancellation of the lease. It evidently placed the land on the market subject to sale.

If by the effect of said instrument the land was placed on the market, was the sale thereof limited to the appellee, Miss McLain, by the terms of the instrument or by the operation of law? As has been stated the land was sold to Miss McLain in accordance with the express wish of the lessee. When the sale was made to her the terms of the waiver were satisfied and executed; the Land Commissioner had accepted the title backing the State and complied with the waiver in making the sale to her. This was certainly the end of the transaction so far as the lessor and lessee and the lease were concerned, and the lease was terminated beyond hope of resuscitation. In the event Miss McLain failed to comply with the law the lease was not revived. When the landlord or owner of the land, upon the acts of the lessee, substitutes another as purchaser or lessee, upon the express agreement of the lessee, and the third party by his own negligence fails to comply with the terms of the agreement,

the cancellation of the contract between the landlord and the third party will not reinstate the original contract between the lessor and first lessee. The lessee when it executed the waiver, though it was desirous of procuring a purchaser of its own choice, was cognizant of the risks which were to be taken by Miss McLain and was responsible for her failure to consummate her purchase of the same. When she failed to perform all acts necessary the lease was not reinstated and no more right could accrue to the lessee. The case of Borchers v. Mead, 43 S. W. Rep., 300, is very analogous, and the facts in that case so far as this point is concerned are very similar. It is held in that case that the first sale after the waiver of the lease being invalid, and that, too, for want of settlement, the land was on the market to the next competent person who made application and complied with the law.

Were it held, that should the sales to the preferred party at any time fail, and by said failure the land was not left on the market to other purchasers, but revived the lease and gave the opportunity again to the lessee to prefer another purchaser, the most wholesome spirit of the law, that is that an equal chance should be given to all and especially a preference to actual settlers, would fail, and the discretion in the sale thereof would pass from the Land Commissioner to the lessee.

*Kirby & Kirby,* also for appellant.—Appellant submits that the opinion of this court in Tolleson v. Rogan, 7 Texas Ct. Rep., 128, is decisive of the question certified in this case. In that case a transfer of the lease being involved, no other effect was given to it than "to hold that under the law as construed it removed the obstacle to a sale interposed by the lease, and gave room for the exercise of the power of the Commissioner to sell and of the applicant to buy, given by the law." Certainly no other or higher effect can be given a waiver, which on its face does not purport to transfer the lease, but simply to waive the protection from sale given by law. We think that it can not be seriously contended that the waiver involved did not remove the obstacle to a sale interposed by the lease, but it is contended that the Commissioner's power to sell was, by the waiver, limited to a sale to appellee. This contention is answered completely by the decision above cited. Neither the power of the Commissioner to sell nor the right of the appellee to buy was conferred by the waiver; its sole office was to give room for the exercise of a power conferred by law on the Commissioner and the exercise of a right to buy conferred by law on appellee.

The waiver either removed the obstacle to a sale, or it did not. If it did, then it would be absurd to say that the lessee could limit the power of sale conferred by law upon the Commissioner. To so hold would be tantamount to a holding that a lessee may absolutely control the exercise of a power conferred by law upon the Commissioner, and may dictate to whom he may sell and to whom he may not.

True, the lessee, by the terms of the same law which conferred the

power of sale on the Commissioner, had the right under the lease to prevent, in the first instance, the exercise of the power of the Commissioner until the expiration of the lease, but no right or power ever existed in the lessee to control or limit that power, once room has been given for its exercise. To hold otherwise would make the will of the lessee superior to the law from which he acquires his rights and invest him with dictatorial power as to who should buy public lands and who not, without reference to the law; and would belittle the law, subvert its plain letter and spirit, and violate every element of sound public policy. Hazlewood v. Rogan, 4 Texas Ct. Rep., 384, 95 Texas, 295.

*Ed. J. Hamner,* for appellee.—The court did not err in refusing to consider the written waiver of the lease on the lands in controversy, because it clearly appeared from said waiver that the lease should remain in force and effect unless the benefits of the waiver accrued to appellee only. Hazlewood v. Rogan, 67 S. W. Rep., 80, 95 Texas, 295.

The court correctly rendered judgment for the appellee because the waiver of the lease, if valid at all, simply transferred the leasehold to appellee, and being the holder of the leasehold, she was entitled to all the privileges and benefits accorded a lessee under the law, and the lease being in full force and effect, the lands were not subject of the sale to the appellant, and hence the appellant's title failed. Ketner v. Rogan, 68 S. W. Rep., 774, 95 Texas, 559.

The written waiver in this case waives the right of a lessee from the State of Texas on school lands to the land in controversy included in said lease in favor of appellee "who has applied to purchase the same," and it states on its face that "it is not intended to apply to any other person." Clearly the lessee has the right to transfer a lease (Stokes v. Riley, 68 S. W. Rep., 703), but if the waiver in this case can be considered a transfer of the lease, then the lease was in full force and effect, for if the appellee was the assignee of the lease and was not an actual settler on the land at the time she applied to purchase the same, the sale to her was void and the lease was not canceled, for the Commissioner of the Land Office can not cancel a lease even with the consent of the lessee, except for nonpayment of rent, and then in the manner provided by statute (Ketner v. Rogan); hence it is immaterial in this case whether the court concluded that the waiver of the lease was a valid transfer or not, and in either event the judgment should be affirmed.

BROWN, Associate Justice.—Certified questions from the Court of Civil Appeals of the Second Supreme Judicial District as follows:

"We deem it advisable to certify to your honors for decision the question stated below, arising upon the facts stated below, in the above cause, now pending before us on motion for rehearing.

"The suit was brought in the District Court by S. D. Smith against

Lucy McLain, to recover four sections of school land, 18, 6, 22 and 40, block 2, H. & G. N. Ry. Co., in Kent County, and resulted in a judgment denying the recovery sought upon the ground that the land was under lease to the Espuela Land and Cattle Company when both parties applied to purchase it, from which this appeal is prosecuted by Smith. The lease was executed January 26, 1898, and had five years to run. On September 4, 1899, Lucy McLain, a feme sole over 21 years of age, applied to purchase one of the sections as an actual settler and the other three as additional land, complying with the law in such cases, and the lands were awarded to her January 22, 1900; but the court found upon sufficient evidence that she was not an actual settler when she made her application, and did not become such until March, 1900. He also found upon sufficient evidence, that on March 12 and March 16, 1900, S. D. Smith made his applications in due form, complying with the law in all respects, to purchase one of said sections as an actual settler and the other three as additional land, and that he was at the time an actual settler in good faith, as required by law, on the section applied for as his home section, and was otherwise eligible as a purchaser.

"In order to show that the land was on the market and subject to his applications, Smith, plaintiff below, offered in evidence a certified copy from the General Land Office of the following instrument:

" 'ESPUELA, Dickens Co., Texas, 4th Sept., 1899.
" 'Hon. Chas. Rogan, Land Commissioner, Austin, Texas:

" 'I, Fred Horsbrugh, manager of the Espuela Land and Cattle Co., Lim'd, hereby certify that I as manager waive the right as lessee of the following sections 18, 6, 22, & 40, all four sections being in block 2 of the H. & G. N. R. Co. in Kent County and held by me in lease No. 23662 in favor of Lucy A. McLain who has applied to purchase same; and I further state that this waiver is not intended to apply to any other person.

" 'FRED HORSBURG, Manager.'

"In connection with this he also offered testimony tending to show that Fred Horsbrugh was authorized as general manager of the company-to execute the instrument, all of which evidence was excluded upon the following grounds:

" '1. Because there is no written authority shown, and Mr. Horsbrugh stated that it did not exist, for Mr. Horsbrugh to convey any estate of inheritance, freehold or otherwise of the Espuela Land and Cattle Company, and without such authority being in writing the transfer is null and void.

" '2. You can not prove authority if it existed, by the agent himself by parol.

" '3. Because there can not be such a thing in law as a waiver of a lease on State school lands to another.

" '4. Because without the consent or authority of the landlord, the lessor, there can be no transfer or waiver of the lease.

" '5. Because there could be no cancellation of the lease by any act of the Land Commissioner or the lessor, save and except under the law, by reason of a failure to pay the interest, or by valid sale of the land to a party authorized to purchase it.

" '6. Further than that, the written instrument offered in evidence appears to be a transfer of the lease or a waiver of the lease in favor of the defendant and no other party, and does not appear to have been executed by the lessee, the Espuela Land and Cattle Company, in Dickens County, Texas, or by anyone authorized in writing by that company to execute such a transfer or waiver, but it purports to be the act of the manager of the Espuela Land and Cattle Company, Limited, a different corporation.

" '7. Again the lease can not be waived in favor of an individual so as to affect the validity of that lease and the liability of the lease to the State, or in any event by the consent of the Commissioner of the General Land Office.'

"To this ruling error is assigned, and the question we deem it advisable to certify, in view of the ruling made in the recent case of Tolleson v. Rogan, is whether or not the court erred in excluding this evidence; that is, whether or not this instrument, which the evidence tended to show was executed by authority of the company holding the lease, had the effect of removing the obstacle interposed by the lease to a purchase of the lands as applied for by appellant?"

Answer: The instrument referred to in the question did not remove the obstacle to a purchase of the land by any person other than Lucy McLain. The land being under a valid lease and situated within the "absolute lease district," the Commissioner of the General Land Office could not sell it during the continuance of the lease except by the consent of the lessee. The consent given for the Commissioner to sell to Lucy McLain did not authorize the sale to another. The lessee had the right to limit the consent to a particular person. The attempted purchase of Lucy McLain being void, the lease continued in force.